Opinion issued November 19, 2009
















In The

Court of Appeals

For The

First District of Texas






NO. 01-09-00186-CV






KRISTI SANTI, Appellant


V.


THE UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT
HOUSTON, Appellee






On Appeal from the 190th District Court

Harris County, Texas

Trial Court Cause No. 2007-74679





O P I N I O N 


 Appellant, Kristi Santi, appeals the trial court's granting of the plea to the
jurisdiction filed by appellee, the University of Texas Health Science Center at
Houston ("the University"). Santi filed this suit against her former employer, the
University, pursuant to the Texas Commission on Human Rights Act ("the Act"). (1) 
In her sole issue, Santi contends the trial court erred by granting the University's plea
to the jurisdiction. We conclude the trial court did not err by granting the University's
plea to the jurisdiction. We affirm the judgment of the trial court.Background

 The University employed Santi for approximately five years as a non-tenured
associate professor in the Developmental Division of the Department of Pediatrics
and as research faculty in the Center for Academics and Reading Skills. On April 14,
2006, she reported a hostile work environment created as a result of gender-related
discrimination by her direct supervisor, Barbara Foorman, affording male peer faculty
members advantages not allowed to female faculty members.

 On June 1, the University informed Santi that it would not renew her contract
after August 31, 2006, even though she received the highest possible ranking on her
annual faculty reviews. Eleven days after she was told her contract would not be
renewed, Santi began negotiations with the University on June 12, 2006 to obtain a
license to market and produce derivatives of materials she co-authored or co-produced while employed at the University. The next day, on June 13, Santi filed a
formal complaint of discrimination. According to Santi, the negotiations to obtain
a license to develop derivative materials proceeded very positively for approximately
a week, then communication ceased. On December 20, 2006, the University informed
Santi that it would not participate in any licensing agreement.

 On March 5, 2007, Santi filed a "Charge of Discrimination" with the Equal
Employment Opportunity Commission (EEOC). Pursuant to a Work Sharing
Agreement with the Texas Workforce Commission-Civil Rights Division ("the
Commission"), the EEOC transferred Santi's charge to the Commission for
investigation. The Commission issued a Dismissal and Notice of Right to File a Civil
Action on October 23, 2007. The EEOC adopted the Commission's findings and
issued a Dismissal and Notice of Rights on December 6, 2007. The following day,
Santi filed this suit.

Plea to the Jurisdiction

 In her sole issue, Santi contends the trial court erred by granting the
University's plea to the jurisdiction because her claim was properly before the court,
she exhausted her administrative remedies, she asserted a continuing violation, and
her claim for retaliation was actionable.


 A. Standard of Review

 A plea to the jurisdiction is a dilatory plea that challenges the trial court's
subject matter jurisdiction. Harris County v. Sykes, 136 S.W.3d 635, 638 (Tex.
2004). Whether the plaintiff has alleged facts that demonstrate subject-matter
jurisdiction is a question of law, which we review de novo. Tex. Dep't of Parks &
Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004). Although we are not to reach
the merits of the plaintiff's case, when the plea to the jurisdiction challenges the
existence of jurisdictional facts, we consider the relevant evidence submitted by the
parties that is necessary to resolve the jurisdictional issue. Id. at 227. This procedure
generally mirrors that of a summary judgment under rule of civil procedure 166a(c). 
Id. at 228; see Tex. R. Civ. P. 166a(c). The plaintiff has the initial burden to plead
facts affirmatively showing the trial court has subject matter jurisdiction. See
Miranda, 133 S.W.3d at 226. The governmental unit then has the burden to assert
that the trial court lacks subject matter jurisdiction and must support that contention
with evidence. Id. at 228. If it does so, the plaintiff must raise a material fact issue
regarding jurisdiction to survive the plea to the jurisdiction. Id. If the evidence
creates a fact issue concerning jurisdiction, the plea to the jurisdiction should be
denied. Id. If the evidence is undisputed or fails to raise a fact issue concerning
jurisdiction, the trial court rules on the plea to the jurisdiction as a matter of law. Id.

 B. Law Concerning Violations of the Texas Commission on Human
Rights Act


 The Act prohibits "unlawful employment actions." An employer commits an
unlawful employment action if the employer "fails or refuses to hire an individual,
discharges an individual, or discriminates in any other manner against an individual
in connection with compensation or the terms, conditions, or privileges of
employment" because of the employee's sex. Tex. Lab. Code Ann. § 21.051(1)
(Vernon 2006). An employer also commits an unlawful employment action if the
employer retaliates or discriminates against a person who opposes a discriminatory
practice or who makes or files a charge or files a complaint under the Act. Id.
§ 21.055 (Vernon 2006). We look to federal law to interpret the Act's provisions
because, "[b]y adopting the Act, the Legislature 'intended to correlate state law with
federal law in employment discrimination cases.'" AutoZone, Inc. v. Reyes, 272
S.W.3d 588, 592 (Tex. 2008) (citations omitted).

 "Texas law requires that a complaint of unlawful employment practices be filed
with the EEOC or the Texas Commission on Human Rights within 180 days after the
alleged unlawful employment practice occurred." Davis v. Autonation USA Corp.,
226 S.W.3d 487, 491 (Tex. App.--Houston [1st Dist.] 2006, no pet.) (citing Specialty
Retailers, Inc. v. DeMoranville, 933 S.W.2d 490, 492 (Tex. 1996)); see Tex. Lab.
Code Ann. § 21.202 (Vernon 2006) (entitled "Statute of Limitations"). "This time
limit is mandatory and jurisdictional." Davis, 226 S.W.3d at 491 (citing Schroeder
v. Tex. Iron Works, Inc., 813 S.W.2d 483, 486 (Tex. 1991)). "Failure to timely file
an administrative complaint deprives Texas trial courts of subject-matter
jurisdiction." Id. (citing Czerwinski v. Univ. of Tex. Health Sci. Ctr., 116 S.W.3d 119,
122 (Tex. App.--Houston [14th Dist.] 2002, pet. denied); Vincent v. W. Tex. State
Univ., 895 S.W.2d 469, 473 (Tex. App.--Amarillo 1995, no writ)). In determining
when an unlawful employment practice occurred, "'[t]he proper focus is upon the
time of the discriminatory acts, not upon the time at which the consequences of the
acts become most painful.'" Davis, 226 S.W.3d at 491 (quoting Del. State Coll. v.
Ricks, 449 U.S. 250, 258, 101 S. Ct. 498, 504 (1980)).

 An exception to the application of the 180-day limitations period is the
continuing violation doctrine. See id. at 493. The continuing violation doctrine
applies when an unlawful employment practice manifests itself over time, rather than
as a series of discrete acts. Id. (citing Wal-Mart Stores v. Davis, 979 S.W.2d 30, 31
(Tex. App.--Austin 1998, pet. denied)). Under the continuing violation theory, a
plaintiff must show an organized scheme leading to and including a present violation,
so that it is the cumulative effect of the discriminatory practice, rather than any
discrete occurrence, that gives rise to the cause of action. Id. (citing Cooper-Day v.
RME Petroleum Co., 121 S.W.3d 78, 87 (Tex. App.--Fort Worth 2003, pet. denied)); 
see also Huckabay v. Moore, 142 F.3d 233, 239 (5th Cir.1998) (describing continuing
violation as "a persisting and continuing system of discriminatory practices in
promotion or transfer that produces effects that may not manifest themselves as
individually discriminatory except in cumulation over a period of time"). For
example, a claim of a hostile work environment is a continuing violation, while
"termination, failure to promote, denial of transfer, or refusal to hire" are discrete
acts. Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 114, 122 S. Ct. 2061,
2073 (2002).

 A lawsuit under the Act is limited to claims made in the charge or complaint
filed with the EEOC or the Commission and factually related claims that can
reasonably be expected to grow out of the commission's investigation. Bartosh v.
Sam Houston State Univ., 259 S.W.3d 317, 321 (Tex. App.--Texarkana 2008, pet.
denied). In reviewing a claimant's charge of discrimination before the EEOC or
Commission, we should construe them with "utmost liberality," although the charge
must contain an adequate factual basis so that it puts the employer on notice of the
existence and nature of the charges. Id. (citing Preston v. Tex. Dep't of Family &
Prot. Servs., 222 Fed. Appx. 353, 356 (5th Cir. 2007)). "The crucial element of a
charge of discrimination is the factual statement contained" in the administrative
complaint. Id. (quoting Preston, 222 Fed.Appx. at 356); see also 29 C.F.R.
§ 1601.12(b) (2009) ("a charge is sufficient when . . . sufficiently precise to identify
the parties, and to describe generally the action or practices complained of").

 C. Analysis

 Within her sole issue, Santi asserts the following reasons in support of her
appeal:

 (1) Her discrimination claim "was properly before the court";


 (2) She timely filed her claims; and 


 (3) "[B]oth pre- and post-termination retaliation are actionable."

 1. Scope of Santi's Claims

 Santi asserts her claim for gender discrimination was properly before the court
because it was included within her claim of retaliation filed with the EEOC.

 On her charge of discrimination filed with the EEOC in this case, in the section
that reads "CAUSE OF DISCRIMINATION BASED ON (Check appropriate
box(es))," Santi marked the box next to "RETALIATION," but not the box next to
"SEX." However, within her description of the particulars of her charge, Santi stated,
"On April 14, 2006, I reported a hostile work environment created as a result of
gender-related discrimination by my direct supervisor Barbara Foorman ("Foorman")
which afforded male peer faculty members . . . advantages not allowed female
Division faculty members." Santi also alleged that, after she learned her contract
would not be renewed, she discovered a male faculty member would replace her as
the director of the project she had been working on. Santi further stated she filed a
formal complaint of gender discrimination after she learned of the non-renewal of her
contract. Santi specifically alleged that although the University denied her the right
to develop and license derivative materials, at least two male counterparts were
allowed by the University to do so. The Commission investigated the claims and sent
a "pre-determination letter" to Santi. The Commission stated, "Based on our review
of the available evidence, we do not believe it can be established that the employer
discriminated against you based on retaliation or any other reasons prohibited by the
laws we enforce." (Emphasis added).

 Santi's charge included an adequate factual basis to put the University on
notice that Santi was complaining of discrimination based upon her gender. Santi
alleged instances when she was treated differently from male counterparts and
described making both informal and formal complaints of gender discrimination to
the University. See 29 C.F.R. § 1601.12(b) (charge sufficient if it "describe[s]
generally the action or practices complained of"). We hold the trial court did not lack
jurisdiction over Santi's gender discrimination claim because she included allegations
of gender discrimination in her charge to the EEOC.

 We sustain this portion of Santi's sole issue.

 2. Timeliness of Filing

 Santi contends December 20, 2006 is the date from which limitations should
be calculated and, calculated from that date, her filings were timely. Santi states that
"rather than June 1, 2006, as proposed by the University as the date Santi's claims
arose, the definitive date was December 20, 2006, when Santi learned that the
University would not grant her a licensing agreement." (Record citations omitted). 
Santi also contends the University's actions constituted a "continuing violation" and,
therefore, calculating limitations from the date of the last discriminatory act on
December 20, 2006 was proper. 

 It is undisputed that on June 1, 2006, more than 180 days from the date Santi
filed her complaint with the EEOC, Santi was informed that her contract would not
be renewed and she would no longer be employed by the University after August 31,
2006. Therefore, unless Santi shows this is a continuing violation, her claim is barred
by limitations.

 Santi contends she has shown a continuing violation because December 20,
2006, the date the University informed Santi it would not grant her the right to license
derivative materials, fell within the 180 day period. Santi did not allege a continuing
violation or an "organized scheme leading to and including a present violation." See
Davis, 226 S.W.3d at 493. Rather, she complains of two discrete acts separated by
over 6 months--the decision to not renew her contract in June and, over 6 months
later, in December, the denial of a right to attempt to license derivative materials. See
Morgan, 536 U.S. at 114, 122 S. Ct. at 2073 (termination is discrete act). We
conclude Santi did not allege facts to raise the issue of a persisting and continuing
system or a continuing scheme as required to show a continuing violation. See Davis,
226 S.W.3d at 491; see also Miranda, 133 S.W.3d at 226 (plaintiff has initial burden
to plead facts affirmatively showing trial court has subject matter jurisdiction). We
hold the trial court did not err by granting the University's plea to the jurisdiction
with respect to Santi's claim for discrimination based upon the decision not to renew
her contract.

 3. Post-Termination Retaliation

 Santi further contends the University's refusal to grant her a right to license
derivative materials is an adverse employment action and is actionable even though
it occurred post-termination.

 Post-termination actions may be the subject of a retaliation claim. See
Robinson v. Shell Oil Co., 519 U.S. 337, 346, 117 S. Ct. 843 (1997); Veprinsky v.
Fluor Daniel, Inc., 87 F.3d 881, 885 n.1 (7th Cir.1996). An adverse employment
action includes an action "in connection with compensation." Tex. Lab. Code Ann.
§ 21.051(1). In her brief, Santi asserts "obtaining a licensing agreement is an
employment benefit." However, Santi did not allege, either in her charge of
discrimination or in her original petition, that the right to license derivative materials
was part of her compensation. Concerning the licensing agreement, Santi alleged,

 As an integral part of academic appointment, it was common for
research materials to be licensed to a third party for marketing and
distribution at which point the author(s) and the University would share
in royalties from the resulting sales. Thereafter, derivative materials
ancillary to the original materials could be developed and further
licensed resulting in additional revenues to the University. Because of
this arrangement, the University, as the author's employer, must "grant"
the author or co-authors the "right" to develop derivative materials. 
Nevertheless, it was good business practice to grant an author or co-author the "right" to develop derivative materials for licensing because
there was no cost to the University associated with such development
and the University shared in royalties generated by sales of the
derivative materials.


Nowhere does Santi refer to this "right" as part of her compensation. Furthermore,
Santi's "Memorandum of Appointment," submitted to the trial court as evidence on
the plea to the jurisdiction states her base compensation and her total compensation. 
The two numbers are the same. The memorandum does not mention the right to
license derivative materials or any other form of compensation. The University's
denial to grant Santi the right to license derivative materials is not an action "in
connection with compensation" and, therefore, does not fall within the waiver of
sovereign immunity provided by the Act. The trial court did not err by granting the
University's plea to the jurisdiction on the claim of retaliation for failure to grant the
right to license derivative materials. See Miranda, 133 S.W.3d at 226 (plaintiff has
initial burden to plead facts affirmatively showing trial court has subject matter
jurisdiction).

Conclusion

 We affirm the judgment of the trial court.





 Elsa Alcala

 Justice


Panel consists of Justices Keyes, Alcala, and Hanks.



 
1. Tex. Lab. Code Ann. §§ 21.001-.556 (Vernon 2006).